**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LAWYERS FOR CIVIL RIGHTS,<br><br>   Plaintiff,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>   Defendant. | CIVIL ACTION NO. 1-20-cv-11777 |

## **COMPLAINT**

### I. NATURE OF ACTION

1. Plaintiff, Lawyers for Civil Rights ("LCR"), brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. On January 23, 2019, LCR sent a letter to Defendant, United States Citizenship and Immigration Services ("USCIS") requesting records relating to changes made to USCIS' interpretation of the "public charge" provision of the Immigration and Nationality Act (the "Request"). Specifically, LCR sought records related to a Draft Regulation that LCR believed may have been intentionally leaked in order to mislead vulnerable families and to dissuade them from applying for public benefits.

2. USCIS has violated the law by failing to substantively respond to the Request within the statutorily-prescribed time limit, failing to disclose the requested documents, and unlawfully withholding the requested information. LCR now asks this Court to order USCIS to respond to the Request and to disclose all records improperly withheld.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to FOIA, 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction over this action as a federal question under 28 U.S.C. § 1331.

4. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

5. Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

### III. PARTIES

6. LCR is a Massachusetts non-profit corporation with its principal place of business at 61 Batterymarch Street, Fifth Floor, Boston, Massachusetts 02110. LCR fosters equal opportunity and fights discrimination on behalf of people of color and immigrants.

7. Defendant USCIS is a federal agency within the Department of Homeland Security ("DHS") that oversees lawful immigration to the United States. USCIS is headquartered at 20 Massachusetts Avenue, NW, Washington, B.C. 20008, and in Massachusetts at the John F. Kennedy Federal Bldg., 15 New Sudbury Street, Room E-160, Boston, Massachusetts 02203.

### IV. STATUTORY FRAMEWORK

**FOIA**

8. FOIA promotes open government by providing every person with a right to request and receive federal agency records. 5 U.S.C. § 552(a)(3)(A).

9. In furtherance of its purpose to encourage open government, FOIA imposes strict deadlines on agencies to provide responsive documents to FOIA requests. *Id.* § 552(a)(6)(A).

10. An agency must comply with a FOIA request by issuing a determination within 20 business days after receipt of the request. *Id.* § 552(a)(6)(A)(i).

11. The determination "must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013).

12. An agency may be entitled to one ten-day extension of time to respond to a request if it provides written notice to the requester explaining that "unusual circumstances" exist that warrant additional time. 5 U.S.C. § 552(a)(6)(B).

13. An agency must immediately notify the requester of its determination whether to comply with a request, and the reasons for it, and of the right of such person to appeal an adverse determination. *Id.* § 552(a)(6)(A)(i). Further, an agency shall make available a FOIA public liaison to aid the requestor in limiting the scope of the request so that it may be processed within the statutory time limit. *Id.* § 552(a)(6)(B)(ii).

14. An agency's failure to comply with any timing requirements is deemed constructive denial and satisfies the requester's requirement to exhaust administrative remedies. *Id.* § 552(a)(6)(C)(i).

15. A FOIA requester who exhausts administrative remedies may petition the court for injunctive and declaratory relief from the agency's continued withholding of public records. *Id.* § 552(a)(4)(B).

**The Public Charge Rule**

16. Under section 212(a)(4)(A) of the Immigration and Nationality Act, an alien who is considered "likely to become a public charge" can be deemed inadmissible to the United States. 8 U.S.C. § 1182(a)(4).

17. Historically, a "public charge" has been defined as an individual who is primarily dependent on federal benefits. For decades, USCIS considered an individual to be "primarily dependent" if public benefits provide more than half of their income and support. 83 F.R. 51114, 51163.

## V.  FACTS

**Revisions to the Public Chare Rule and LCR's Interest in Proposed Changes**

18. Part of LCR's core mission is public education on areas of interest to the groups LCR represents. As a result, gathering and disseminating information—particularly from public officials or agencies—is an integral part of LCR's mission.

19. Materials LCR disseminates are available for free, to everyone, including other non-profit organizations, faith communities, and institutions of learning. LCR also disseminates information through its website.

20. On February 8, 2018, Reuters reported the existence of a draft rule that took a highly draconian approach to defining a "public charge" (the "Draft Regulation") and further reported that DHS had "drafted rules… that would allow immigration officers to scrutinize a potential immigrant's use of certain taxpayer-funded public benefits to determine if they could become a public burden."[1]

21. Additionally, on February 8, 2018, Vox reported on the existence of the Draft Regulation and included a link to a PDF of the Draft Regulation in its story. (A copy of the Draft Regulation is attached as <u>Exhibit A</u>.) The Vox article further reported that the federal administration was "working on new rules that would allow the government to keep immigrants from settling in the US, or even keep them from extending their stays, if their families had used a broad swath of local, state, or federal social services to which they're legally entitled[.]"[2]

---

[1] https://www.reuters.com/article/us-usa-immigration-services-exclusive/exclusive-trump-administration-may-target-immigrants-who-use-food-aid-other-benefits-idUSKBN1FS2ZK (last visited Sep. 29, 2020).

[2] https://www.vox.com/2018/2/8/16993172/trump-regulation-immigrants-benefits-public-charge (last visited Sep. 29, 2020).

22.  The Draft Regulation radically redefined the notion of a "public charge" to keep immigrants from accessing legal permanent residency if they or their household members used even one of a variety of municipal, state or federal services. For example, the Draft Regulation penalized:

- The use of educational benefits like the Children's Health Insurance Program ("CHIP") or HeadStart;
- Transit vouchers;
- Low-Income Home Energy Assistance Program ("LIHEAP"); and
- Women, Infants, and Children ("WIC")

See Ex. A.

23.  Significantly, the Draft Regulation would have penalized green card applicants whose family members—including U.S. citizen children—received benefits to which they were legally entitled.

24.  Based on these and similar reports, and review of the Draft Regulation, LCR became concerned that federal agencies planned to radically redefine the notion of a "public charge" to keep immigrants from accessing legal permanent residency if they or their household members used even one of a variety of municipal, state or federal services to which those immigrants were entitled.

25.  The public charge rule has been a centerpiece of LCR's immigrant rights advocacy for nearly two years.

26.  In particular, since 2018, LCR has and continues to:

- Conduct numerous workshops, training sessions, and webinars for community-based organizations, service providers, and healthcare organizations regarding the scope and consequences of the rule;

- Create multilingual handouts and other materials for immigrant families and service providers;

- Create multilingual Facebook videos on the scope and relevance of the public charge rule, with an emphasis on benefits utilized as part of testing, treatment, and care for COVID-19;

- Operate a bilingual English-Spanish public charge hotline, where community members and service providers can call with questions pertaining to public charge; and

- Represent several Massachusetts and national healthcare organizations as *amici* in *Washington v. Department of Homeland Security*, 4:19-cv-05210-RMP a challenge to the finalized public charge rule in the Eastern District of Washington.

27. On October 10, 2018, DHS proposed a rule concerning the definition of public charges at 83 F.R. 51114, Docket No. USCIS-2010-0012 that differed significantly from the Draft Regulation.

28. The rule proposed by DHS on October 10, 2018 – while still gravely harmful to LCR's client populations – did not contain any of the proposed revisions mentioned above in Paragraph 21.

29. Even though the rule proposed by DHS on October 10, 2018 was less draconian than the Draft Regulation, the damage had already been done. Over the course of educational workshops, numerous intake calls, and direct contacts from community partners, LCR learned that, across the Commonwealth and the country, immigrant communities had already been chilled from seeking public benefits.

30. Community partners, including the MGH Healthcare Center in Chelsea, Massachusetts, reported that even those categorically excluded from the rule proposed by DHS on October 10, 2018—for example, U.S. citizen children of non-citizen parents—were skipping appointments or disenrolling from life-saving benefits like WIC under the mistaken belief they would be targeted for immigration enforcement or unable to seek immigration relief.

31. Believing that the Draft Regulation may have been intentionally leaked in order to mislead vulnerable immigrant families and to dissuade them from applying for public benefits, LCR sought information regarding the drafting, deliberation, and revision of the October 10, 2018 rule.

**The Instant FOIA Request**

32. On January 23, 2019, LCR sent a letter to USCIS requesting records relating to changes made to USCIS' interpretation of the "public charge" provision of the Immigration and Nationality Act (the "Request"). (A copy of the Request is attached hereto as Exhibit B.)

33. The Request sought six categories of documents:

- *All public records referencing or relating to the Draft Regulation.*
- *All public records referencing or relating to a decision to release, leak, or otherwise provide the Draft Regulation to the news media or any other member of the public.*
- *All public records reflecting coordination between the White House and USCIS to draft, prepare, edit, revise, or research the Draft Regulation.*
- *All public records reflecting coordination between the Office of Management and Budget and USCIS to draft, prepare, edit, revise or research the Draft Regulation.*
- *All public records referencing or relating to a decision to abandon, discard, or revise the Draft Regulation following its publication by the media.*
- *All public records referencing or relating to a "chilling effect" created by the Draft Regulation, meaning the possibility that immigrants might stop using public benefits as a result of learning about the Draft Regulation, whether or not the Draft Regulation was ever officially promulgated.*

*See* Ex. B.

34. That same day, LCR received an automated reply e-mail. (A copy of the reply e-mail is attached hereto as Exhibit C.)

35. On January 31, 2019, LCR received a confirmation e-mail stating that the Request had been assigned the tracking number COW2019000106. (A copy of this e-mail is attached hereto as Exhibit D.)

36. On May 28, 2019—approximately four months after the Request was submitted—Senior Government Information Specialist T. Allen Jaynes contacted LCR by e-mail stating that he had several questions about the Request that he wished to discuss. (A compilation of e-mails between Mr. Jaynes and LCR Staff Attorney Lauren Sampson is attached hereto as <u>Exhibit E</u>.)

37. After exchanging several e-mails, Mr. Jaynes and Attorney Sampson spoke on May 31, 2019. (*See* Ex. E.)

38. Mr. Jaynes sent an e-mail on May 31, 2019 stating that, pursuant to the telephone conversation with Attorney Sampson, "USCIS will initially limit our search to the Office of Policy and Strategy and the USCIS Director's Office. However, USCIS will expand this search if our initial search determines additional offices will also need to provide records." (*See* Ex. E.)

39. Attorney Sampson responded saying that she agreed to the terms in Mr. Jaynes' e-mail. (*See* Ex. E.)

40. On August 23, 2019, Attorney Sampson sent an e-mail to Mr. Jaynes seeking an update as to the status of the Request, as no documents had been received. (*See* Ex. E.)

41. On August 26, 2019, Mr. Jaynes responded stating that the Request was, at that time, number 732 in a queue of 1,264 pending requests and that the current average processing time was 377 days. (*See* Ex. E.)

42. On July 27, 2020, Attorney Sampson again e-mailed Mr. Jaynes inquiring about the status of the Request. (*See* Ex. E.)

43. Mr. Jaynes responded on July 27, 2020, stating that the Request was, at that time, number 480 in a queue of 1459 pending requests. (*See* Ex. E.)

44. To date, USCIS has not responded to the Request and has not produced any responsive documents to LCR. According to USCIS' FOIA portal, the estimated completion date is still June 13, 2019—over one year ago.

## VI.  STATEMENT OF CLAIMS

### Count I:  Failure to Respond to Request Within Statutory Timeframe

45. Plaintiff restates and realleges the foregoing paragraphs as if fully set out herein.

46. After LCR sent the Request on January 29, 2019, USCIS failed to provide a substantive response within 20 business days.

47. USCIS never claimed "unusual circumstances" that would entitle it to an additional ten days in which to reply, but, even if USCIS had claimed such circumstances, that deadline was missed as well.

48. Therefore, USCIS failed to respond to the Request within the statutorily mandated timeframe, in violation of LCR's rights under FOIA, including but not limited to 5 U.S.C. §§ 552(a)(6)(A)(i) and (6)(B).

### Count II:  Failure to Produce Responsive Records

49. Plaintiff restates and realleges the foregoing paragraphs as if fully set out herein.

50. USCIS has failed to produce any responsive records in response the Request.

51. USCIS failed to make reasonable efforts to search for records responsive to the Request, in violation of LCR's rights under FOIA, including but not limited to 5 U.S.C. § 552(a)(3).

52. USCIS failed to disclose and produce any records responsive to the Request, in violation of LCR's rights to those records under FOIA, including but not limited to 5 U.S.C. § 552(a)(3)(A).

1034100\306674297.v1

53. USCIS failed to disclose and produce records responsive to the Request without a legal basis for withholding such records, in violation of FOIA, including but not limited to 5 U.S.C. §§ 552(a)(3)(A) and (6)(A).

54. LCR is entitled to reasonable attorney's fees and costs under 5 U.S.C. § 552(a)(4)(E).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Lawyers for Civil Rights, requests that this Court:

    a.    Expedite its consideration of this action pursuant to 28 U.S.C. § 1657;

    b.    Find that Defendant's failure timely to respond or disclose records was unlawful;

    c.    Order Defendant to search for and promptly disclose all records responsive to Plaintiff's Request;

    d.    Award Plaintiff attorneys' fees and costs; and

    e.    Grant such other relief as the court may deem just and proper.

LAWYERS FOR CIVIL RIGHTS
By: Its Attorneys

*/s/ Kevin W. Manganaro*
Marissa I. Delinks, BBO #662934
Kevin W. Manganaro, BBO #690082
HINSHAW & CULBERTSON LLP
53 State Street, 27th Floor
Boston, MA 02109
Phone: 617-213-7000
Fax: 617-213-7001
E-mail: mdelinks@hinshawlaw.com
        kmanganaro@hinshawlaw.com

>Oren Sellstrom (BBO #569045)
>Lauren Sampson (BBO #704319)
>Lawyers for Civil Rights
>61 Batterymarch Street, 5th Floor
>Boston, MA 02110
>(617) 988-0609
>lsampson@lawyersforcivilrights.org

Dated: September 29, 2020

## CERTIFICATE OF SERVICE

    I, Kevin W. Manganaro, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

>*/s/ Kevin W. Manganaro*
>Kevin W. Manganaro