UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAWYERS FOR CIVIL RIGHTS,

Plaintiff,

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES

Defendant.

Case No. 20-cv-11777-RGS

**REPORT AND RECOMMENDATION ON
CROSS PARTIAL MOTIONS FOR SUMMARY JUDGMENT**

I.      INTRODUCTION ................................................................................................. 2

II.     BACKGROUND .................................................................................................. 2

III.    STANDARD OF REVIEW .................................................................................. 5

IV.     ANALYSIS........................................................................................................... 7

   A.   The Consultant Corollary.................................................................................. 8

   B.   USCIS's Claims of Privilege Invoking FOIA Exemption 5 ............................ 8

      1.   Background on Exemption 5 ........................................................................ 8

      2.   Deliberative Process Privilege...................................................................... 9

         a.   Redlined Versions and Proposed Revisions .......................................... 11

         b.   Responses to Media Content or Inquiries ............................................. 12

      3.   Attorney-Client Privilege .......................................................................... 15

   C.   USCIS's Claimed Exemptions under FOIA Exemption 6 ............................. 17

      1.   Personnel and Medical Files and Similar Files .......................................... 18

      2.   Clearly Unwarranted Invasion of Privacy ................................................. 19

V.      Request for *In Camera* Review.......................................................................... 22

VI.     CONCLUSION................................................................................................... 23

**LEVENSON, U.S.M.J.**

## I.      INTRODUCTION

Lawyers for Civil Rights ("LCR"), a nonprofit organization with a social justice mission, seeks access to documents from the United States Citizenship and Immigration Services ("USCIS" or the "agency") pursuant to the federal Freedom of Information Act ("FOIA"). USCIS has released several batches of documents, some redacted, but LCR says the agency has not done enough under FOIA. Before the Court are motions for partial summary judgment from both parties concerning the documents produced thus far.

As discussed below: (1) in seeking to avail itself of FOIA Exemption 5, the agency has properly invoked the deliberative process privilege in several instances, but in other instances, LCR has the better of the argument; (2) the agency has appropriately asserted the attorney-client privilege to support withholdings under Exemption 5; and (3) in its invocation of FOIA Exemption 6—the privacy exemption—the agency has not adequately supported its contention that identifying the personnel who prepared the documents in question would constitute a "clearly unwarranted invasion of personal privacy."

Accordingly, I recommend granting in part and denying in part both motions.

## II.      BACKGROUND

In February 2018, during the Trump Administration, news outlets reported that Defendant USCIS was considering rules that would greatly limit immigrants from settling in the United States based on their reliance on social services. Pl.'s Statement of Undisputed Material Facts ¶¶ 3–4, ECF No. 25 [hereinafter *LCR SOF*]. The news outlets reported that USCIS had prepared a draft regulation (the "Draft Regulation") that included a substantial revision of the criteria for determining which aliens seeking admission to the United States are subject to

exclusion under the "public charge" provisions of the Immigration and Nationality Act.[1] *Id.* ¶¶ 3–4. As characterized in a media report quoted in LCR's complaint, the Draft Regulation included "new rules that would allow the government to keep immigrants from settling in the US, or even keep them from extending their stays, if their families had used a broad swath of local, state, or federal social services to which they're legally entitled[.]" Compl. ¶ 21, ECF No. 1 (alteration in original).

Ultimately, on October 10, 2018, USCIS proposed a regulation that was published to the Federal Register on August 14, 2019. LCR SOF ¶ 7, ECF No. 25; Def.'s Statement of Undisputed Material Facts, ECF No. 20, ¶ 22; *see* Inadmissibility on Public Charge Grounds, 84 Fed. Reg. 41,292 (Aug. 14, 2019). The published regulation differed from the Draft Regulation and did not include the proposed revisions that had been described in news reports as preventing immigrants from remaining in the United States if they availed themselves of certain social services to which they are entitled. Compl. ¶¶ 21, 28. LCR contends, however, that news coverage of the Draft Regulation had a chilling effect, leading members of immigrant communities to forgo public benefits for fear of jeopardizing their immigration status. LCR SOF ¶¶ 8–9, ECF No. 25.

LCR, a Massachusetts nonprofit "with the mission of fostering equal opportunity and fighting discrimination on behalf of people of color and immigrants," (LCR SOF ¶ 1, ECF No. 25) grew "concerned that the initial draft rule had been deliberately leaked [to the press] in order

---

[1] The relevant portion of the statute provides that "[a]ny alien who, in the opinion of the consular officer at the time of application for a visa, or in the opinion of the Attorney General at the time of application for admission or adjustment of status, is likely at any time to become a public charge is inadmissible." 8 U.S.C. § 1182(a)(4)(A).

to dissuade immigrant communities from accessing public benefits." Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. 2, ECF No. 26.

On January 23, 2019, LCR sent a FOIA request letter to USCIS seeking six categories of documents, all related to the Draft Regulation.[2] LCR SOF ¶ 10, ECF No. 25.

After USCIS produced no responsive documents for over one and a half years, LCR sued, filing its complaint on September 29, 2020. *Id.* ¶¶ 10, 17–18; *see* Compl., ECF No. 1. Ultimately, USCIS produced four heavily redacted batches of documents to LCR in January, February, March, and April of 2021. LCR SOF ¶¶ 19–25, ECF No. 25. On May 12, 2021, USCIS provided a *Vaughn* Index accounting for its decisions with respect to release and redaction of the documents it provided. *Id.* ¶¶ 26–27.

---

[2] The six categories of documents requested were as follows:

- All public records referencing or relating to the Draft Regulation.
- All public records referencing or relating to a decision to release, leak, or otherwise provide the Draft Regulation to the news media or any other member of the public.
- All public records reflecting coordination between the White House and USCIS to draft, prepare, edit, revise, or research the Draft Regulation.
- All public records reflecting coordination between the Office of Management and Budget and USCIS to draft, prepare, edit, revise or research the Draft Regulation.
- All public records referencing or relating to a decision to abandon, discard, or revise the Draft Regulation following its publication by the media.
- All public records referencing or relating to a "chilling effect" created by the Draft Regulation, meaning the possibility that immigrants might stop using public benefits as a result of learning about the Draft Regulation, whether or not the Draft Regulation was ever officially promulgated.

LCR SOF ¶ 10, ECF No. 25.

LCR contends that USCIS's production is insufficient under FOIA. Because LCR's concerns will apply to future production if USCIS proceeds as it has done so far, the parties have each presented partial summary motions aimed at resolving disputes about the current production and guiding future production. Since the filing of the complaint, USCIS produced further information to LCR and provided a Supplemental *Vaughn* Index on August 6, 2021. *See* Decl. of Jennifer Piateski in Supp. of Def.'s Suppl. *Vaughn* Index 3, ECF No. 28-1; *see generally* Suppl. *Vaughn* Index, ECF No. 28-2.

To facilitate and organize the analysis of the various documents listed in the Supplemental *Vaughn* Index, I append to this recommendation a table—Appendix A—that divides the withheld materials into twenty-four enumerated items. *See* App. A. Most of the twenty-four items correspond to a single entry in the Supplemental *Vaughn* Index[3] (ECF No. 28-2), and they are largely (but not entirely) presented in Appendix A in the same order that they appear in the Index. Throughout this recommendation, documents (or groups of related documents) withheld by USCIS are referred to by the item numbers used in Appendix A.

### III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the moving party shows that there is no genuine dispute of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and a fact is material

---

[3] Only two entries in the Supplemental *Vaughn* Index are not correlated to a single item in Appendix A. The second entry in the Index (regarding pages 2–9 of USCIS's first production) has no corresponding item number in Appendix A because USCIS no longer claims that those pages are exempt from production. *See* Suppl. *Vaughn* Index 1, ECF No. 28-2. The sixth entry in the Index is split into items 4 and 5 of Appendix A because the entry describes two discrete documents. *See id.* at 5.

if it "might affect the outcome of the suit under the governing law." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.* v. *Cartett*, 477 U.S. 317, 323 (1986). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist." *Ingram* v. *Brink's, Inc.*, 414 F.3d 222, 228–29 (1st Cir. 2005). The Court must draw all reasonable inferences in favor of the nonmovant, though "summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Id.* at 229.

FOIA requires federal agencies to disclose records upon request "unless [the records] may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b)." *U.S. Dep't of Just. v. Julian*, 486 U.S. 1, 8 (1988). Summary judgment is the norm in FOIA cases. *Moradi* v. *Morgan*, 527 F. Supp. 3d 144, 150 (D. Mass. 2021) ("FOIA cases are typically decided on motions for summary judgment.") (quoting *Am. Civ. Liberties Union of Mass., Inc.* v. *U.S. Immigr. & Customs Enf't*, 448 F. Supp. 3d 27, 35 (D. Mass. 2020)). An agency is entitled to summary judgment in a FOIA action if it "proves that it has fully discharged its obligations under the FOIA after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Crooker* v. *Tax Div. of U.S. Dep't of Just.*, No. 94-CV-30129-MAP, 1995 WL 783236, at *7 (D. Mass. Nov. 17, 1995) (quoting *Gordon v. Thornburgh*, 790 F. Supp. 374, 378 (D.R.I. 1992)). Conversely, "[s]ummary judgment in favor of the FOIA plaintiff is appropriate 'when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption.'" *Nat. Res. Def.*

*Council, Inc. v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384, 398 (S.D.N.Y. 2014) (quoting *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007)).

When the government contends that a document is exempted from disclosure because it falls under one of the nine FOIA exemptions, the burden is on the government to prove that the exemption applies, and district courts must decide the question de novo. *Carpenter v. U.S. Dep't of Just.*, 470 F.3d 434, 438 (1st Cir. 2006); *see* 5 U.S.C. § 552(a)(4)(B). "The nine FOIA exemptions are to be construed narrowly, with any doubts resolved in favor of disclosure." *Carpenter*, 470 F.3d at 438. "Summary judgment in FOIA cases 'may be granted solely on the basis of agency affidavits.'" *Moradi*, 527 F. Supp. 3d at 150 (quoting *Crooker*, 1995 WL 783236, at *10).

Here, there are motions for summary judgment from both parties. "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the Court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc.* v. *Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001). The Court thus applies the same standard, but must "view each motion separately, drawing all inferences in favor of the nonmoving party." *Fadili* v. *Deutsche Bank Nat. Tr. Co.*, 772 F.3d 951, 953 (1st Cir. 2014).

## IV.    ANALYSIS

The parties have jointly agreed to bring cross-motions for summary judgment, and the factual and legal issues raised in each motion are essentially mirror images. Accordingly, it makes sense to address in tandem the parties' competing contentions about the legal theories that USCIS identifies as grounds for withholding particular documents.

**A.      *The Consultant Corollary***

It is worth noting at the outset that a central issue in this case has already been resolved. USCIS initially invoked the so-called "consultant corollary" to the deliberative process privilege.[4] This would have shielded from disclosure documents that reflect the role that a third-party entity, *i.e.*, a private firm, may have played in connection with the agency's consideration of the public charge rules.

The applicability of the consultant corollary was a primary focus of LCR's Motion for Summary Judgment. *See* Pl.'s Mot. for Partial Summ. J. 1, ECF No. 21 ("[T]his case is, at bottom, about the potential for improper third-party influence over the development of governmental policies."). USCIS, however, ultimately decided to turn over the documents that it had previously withheld under the consultant corollary. *See* Def.'s Mem. of Law in Opp'n to Pl.'s Cross Mot. for Summ. J. 2, ECF No. 28. This puts this third-party issue to rest.

The parties continue to press their respective positions with respect to the open issues discussed below, which are ripe for disposition.

**B.      *USCIS's Claims of Privilege Invoking FOIA Exemption 5***

1.      <u>Background on Exemption 5</u>

FOIA Exemption 5 does not itself create privileges against disclosure. Rather, it is an umbrella provision that allows an agency to invoke—in response to FOIA requests—the same kinds of privileges that the agency could ordinarily raise in connection with litigation and discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) ("To qualify, a document . . . must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."). Thus,

---

[4] As discussed below, the deliberative process privilege is available under FOIA Exemption 5.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 covers "those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). The relevant privileges include "the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021). In this case, USCIS invokes Exemption 5, claiming that the deliberative process privilege and the attorney-client privilege limit its disclosure obligations under FOIA.

In ordinary litigation, the burden of establishing that a particular privilege applies generally falls upon the party asserting that privilege. *See FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000) ("In a discovery dispute, the burden to establish an applicable privilege rests with the party resisting discovery."). So too in the FOIA context, it is the agency's burden to demonstrate that the materials it seeks to withhold pursuant to Exemption 5 falls within a recognized privilege. *See, e.g.*, *Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*, 370 F. Supp. 3d 116, 126, 139 (D.D.C. 2019) (holding that a draft memorandum was privileged under Exemption 5 because the agency had met the burden of demonstrating the applicability of two recognized privileges: the attorney client privilege and the work-product doctrine).

2.   Deliberative Process Privilege

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath Water Users Protective Ass'n*, 532 U.S. at 8 (quoting *Sears, Roebuck & Co.*, 421 U.S. at 150). The incorporation of the deliberative process

9

privilege into Exemption 5 is meant to "facilitate[] government decision making by: (1) assuring subordinates will feel free to provide uninhibited opinions, (2) protecting against premature disclosure of proposed government policies, and (3) preventing confusion among the public that may result from releasing various rationales for agency action." *N.H. Right to Life* v. *U.S. Dep't of Health & Hum. Servs.*, 778 F.3d 43, 52 (1st Cir. 2015).

USCIS claims protection under the deliberative process privilege for twenty-two items, as enumerated in Appendix A. *See* App. A, items 1–22.[5] These items fall into two main categories, which are addressed separately in this recommendation. First, there are nine items that are described as reflecting drafts and mark-ups of the proposed regulation. Second, there are thirteen items that deal with media relations. This latter category can, in turn, be divided into two groups: (a) items about responding to media coverage of the proposed changes to the public charge regulations, and (b) items for which USCIS's descriptions do not mention "public charge."

To withhold documents under the deliberative process privilege, an agency must prove that the requested documents were both "predecisional" and "deliberative." *Providence J. Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992).

"A document is predecisional if the agency can: '(1) pinpoint the specific agency decision to which the document correlates, (2) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (3) verify that the document precedes, in temporal sequence, the decision to which it relates.'" *N.H. Right to Life*, 778 F.3d at 52–53 (quoting *Providence J. Co.*, 981 F.2d at 557). An agency may

---

[5] For seven of these twenty-two items, USCIS also invokes the attorney-client privilege as an independent basis for nondisclosure.

not simply put forth "[c]onclusory assertions that merely parrot the legal test"; it "must at least specify the relevant final decision" in its description of documents. *Mullane v. U.S. Dep't of Just.*, No. 19-CV-12379-DJC, 2021 WL 1080249, at *9 (D. Mass. Mar. 19, 2021).

To come under Exemption 5, a predecisional document must also qualify as deliberative. "A predecisional document will qualify as 'deliberative' provided it (i) formed an essential link in a specified consultative process, (ii) 'reflect[s] the personal opinions of the writer rather than the policy of the agency,' and (iii) if released, would 'inaccurately reflect or prematurely disclose the views of the agency.'" *Providence J. Co.*, 981 F.2d at 559 (alteration in original) (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1118–19 (9th Cir. 1988)). To establish that a document is deliberative, the agency must present "'the function and significance of the document(s) in the agency's decisionmaking process,' 'the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s),' and the positions in the chain of command of the parties to the documents." *Arthur Andersen & Co.* v. *IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982) (citations omitted) (quoting *Tax'n with Representation Fund v. IRS*, 646 F.2d 666, 678–79, 681 (D.C. Cir. 1981)).

### a. Redlined Versions and Proposed Revisions

Items 1, 2, 3, 4, 5, 6, 7, 17, and 22 are protected by the deliberative process privilege because they are both predecisional and deliberative. Items 1 through 7 all reflect or discuss redlined versions of proposed revisions to the Draft Regulation. Items 17 and 22 are email discussions about the Draft Regulation, including discussions concerning what kinds of public benefit usage should be considered in determining whether an individual should be excluded as a potential "public charge."

These nine documents are predecisional. That is, USCIS has established: (1) that the documents relate to USCIS' possible reinterpretation of the definition of "public charge" under the Immigration and Nationality Act; (2) that the authors proposed, shared, and reviewed changes to a draft for the purpose of assisting the agency official charged with making the decision; and (3) that the documents precede the decision. *See N.H. Right to Life*, 778 F.3d at 52–53.

These nine documents are also deliberative. USCIS has adequately shown: (1) that they formed an essential link in a specified consultative process regarding whether to reinterpret the meaning of "public charge;" (2) that they reflect the personal opinions of USCIS staff members rather than the policy of the agency; and (3) that, if released, the contents of these documents would "inaccurately reflect or prematurely disclose the views of the agency" regarding the official interpretation of "public charge" under the Immigration and Nationality Act. *See Providence J. Co.*, 981 F.2d at 559 (quoting *Nat'l Wildlife Fed'n*, 861 F.2d at 1118–19). Therefore, summary judgment should be granted to USCIS as to items 1, 2, 3, 4, 5, 6, 7, 17, and 22.

        b.     *Responses to Media Content or Inquiries*

USCIS has asserted that the deliberative process privilege also protects from disclosure items 8–16 and 18–21. Unlike the redline drafts and the discussions of criteria for a revised regulation, most of these materials are described as concerning the agency's dealings with the news media.

Of the thirteen items in this media-relations category, seven are described as discussing how or whether to respond to news coverage and inquiries about the proposed public charge rule. This subset comprises items 8, 11, 12, 16, 18, 20, and 21. As for the remaining six items, their

descriptions in the Supplemental *Vaughn* Index do not use the term "public charge" or explicitly reference the proposed rule. This subset comprises items 9, 10, 13, 14, 15, and 19.

Broadly speaking, responding to news articles is not the same thing as deliberating about potential changes to an agency's rules. Merely because the news articles concern the same subject as the rulemaking does not automatically bring media-relations into the ambit of the deliberative process. More is required to support an invocation of the deliberative process privilege.

In certain circumstances, records concerning "how and what to communicate to the public" may fall within the deliberative process privilege. *See N.H. Right to Life*, 778 F.3d at 54 (finding that deciding "how and what to communicate to the public . . . is a decision in and of itself," so documents regarding that decision were properly withheld); *Am. Civ. Liberties Union of Mass., Inc. v. U.S. Immigr. & Customs Enf't*, 448 F. Supp. 3d 27, 37–38 (D. Mass. 2020) (finding that draft talking points were not protected by the deliberative process privilege because they did not "involve not-yet-finalized policy decisions [nor] were otherwise bound up with policy matters"). Communications are protected by the deliberative process privilege when they "would reveal the deliberative process underlying a *not-yet-finalized* policy decision, including the very decision about what message to deliver—provided that the particular messaging decision is among those that Congress has asked the agency to make." *Am. Civ. Liberties Union of Mass., Inc.*, 448 F. Supp. 3d at 38 (quoting *New York v. U.S. Dep't of Com.*, No. 18-CV-2921-JMF, 2018 WL 4853891, at *2 (S.D.N.Y. Oct. 5, 2018)). Communications are not protected, however, when they merely reflect deliberations about how to characterize a prior decision. *Id.*

For the first subset of media-relations documents (*i.e.*, the seven that discuss responses to media attention to the proposed public charge rule), USCIS's description of the documents is

insufficient to establish that the deliberative process shields these documents from disclosure. To be sure, these communications concern media attention that focused on possible changes to the agency's rules. But USCIS does not show that these communications were part of the deliberative process of formulating the rule changes, nor that deciding how to respond to media coverage is a decision that Congress specifically delegated to USCIS.

Furthermore, with the exception of item 16, USCIS does not assert that these communications themselves disclose the agency's deliberations about contemplated rule changes. For example, the description of item 20 simply points to a discussion about whether messaging should go out in response to an upcoming news article regarding the proposed public charge rule; there is no indication that item 20 itself reveals any actual deliberations concerning such a rule. *See* Suppl. *Vaughn* Index 16, ECF No. 28-2.

Of the media-relations materials, only item 16 is described as containing information that discloses actual deliberations regarding the contemplated rule changes. Specifically, item 16 is described as including a draft proposed response, together with a draft version of the proposed public charge rule. *See* Suppl. *Vaughn* Index 14, ECF No. 28-2. As such, item 16 contains communications "of a nature that they would reveal the deliberative process underlying a *not-yet-finalized* policy decision." *Am. Civ. Liberties Union of Mass., Inc.*, 448 F. Supp. 3d at 38 (quoting *New York*, 2018 WL 4853891, at *2). Accordingly, item 16 is covered by the deliberative process privilege and is exempt from disclosure.

As for the remainder of the media-relations documents (items 9, 10, 13, 14, 15, and 19), USCIS's descriptions do not even use the term "public charge" or reference the proposed rule. USCIS fails to demonstrate that these materials would "reveal the deliberative process

underlying a not-yet-finalized policy decision," and these items are thus not covered by the deliberative process privilege. *See id.*

3.   Attorney-Client Privilege

The attorney-client privilege "protects confidential communications made by a client to his attorney." *Maine* v. *U.S. Dep't of Interior*, 298 F.3d 60, 70 (1st Cir. 2002). To invoke the privilege to withhold a document, a party must demonstrate "(1) that he was or sought to be a client of [the attorney]; (2) that [the attorney] in connection with the [document] acted as a lawyer; (3) that the [document] relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in legal proceedings; and (4) that the privilege has not been waived." *Id.* at 71 (alterations in original) (quoting *United States v. Bay State Ambulance and Hosp. Rental Serv., Inc.*, 874 F.2d 20, 27–28 (1st Cir. 1989)).

USCIS claims that the attorney-client privilege (in addition to the deliberative process privilege) protects from disclosure items 3, 6, 8, 13, 14, 16, and 17. These seven items include email exchanges in which USCIS employees sought and received legal advice from counsel about a variety of topics. Some are communications with counsel about proposed language for the draft rule and the effects of proposed changes to the draft rule (*i.e.*, material covered by the deliberative process privilege). Other documents reflect confidential attorney-client communications about topics that are not protected by the deliberative process privilege, such as responses to news articles and talking points related to the draft rule.

All these email communications between USCIS and its legal counsel satisfy the requirements to be protected by the attorney-client privilege. USCIS has sufficiently demonstrated that: (1) the agency was a client of the attorney in question, its own counsel; (2) USCIS counsel acted in their capacity as an attorney in these email communications; (3) the

email communications relate to USCIS employees' purpose of securing a legal opinion, legal services, or assistance in legal proceedings; and (4) USCIS employees have not waived the privilege. *See Maine*, 298 F.3d at 71.

LCR argues that the attorney-client privilege does not extend to matters that were ultimately intended for disclosure to third parties and, on this basis, contends that USCIS's privilege claim is overly broad. *See* Pl.'s Post-Hr'g Suppl. Mem. in Supp. of Mot. for Partial Summ. J. 4, 8–9, ECF No. 37. LCR challenges the withholding of items that are described as responses to news articles about the draft rule or as talking points related to the draft rule. It is true that matters intended for disclosure outside the attorney-client relationship are not privileged. *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990) ("The attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed."). But this principle tells us only that the ultimate communications to the media, or talking points and the like, are not privileged. It tells us nothing about confidential attorney-client communications that may have preceded the public disclosure. *Cf. United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) (noting as to tax returns— which are intended for disclosure to the IRS—that the court "would be reluctant to hold that a lawyer's analysis of the soft spots in a tax return and his judgments on the outcome of litigation on it are not legal advice"). If the rule were as LCR suggests, no one could confer with their lawyer on a confidential basis before making a public statement.

Confidential attorney-client communications concerning contemplated public disclosures are generally protected by attorney-client privilege. It is true that, in some circumstances public disclosures of privileged material may create an implied waiver of the privilege extending to the entire subject matter of the disclosed privileged communication. *See In re von Bulow*, 828 F.2d

16

94, 103 (2d Cir. 1987) ("It would be unfair to allow a client to assert the attorney-client privilege and prevent disclosure of damaging communications while allowing the client to disclose other selected communications solely for self-serving purposes." (quoting *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 979 (D. Del. 1982))). However, the main occasion for finding such a waiver is when privileged material has been selectively disclosed in a manner prejudicial to another party (often referred to as using the privilege as both a "sword and shield"). *See id.* Outside this context, the courts do not readily find implied subject-matter waivers. *See In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003) ("Virtually every reported instance of an implied waiver extending to an entire subject matter involves a judicial disclosure, that is, a disclosure made in the course of a judicial proceeding. . . . Accordingly, we hold, as a matter of first impression in this circuit, that the extrajudicial disclosure of attorney-client communications, not thereafter used by the client to gain adversarial advantage in judicial proceedings, cannot work an implied waiver of all confidential communications on the same subject matter."). There is no reason to find a broad implied waiver in the matter at bar. On the contrary, a rule that imposed a broad subject-matter waiver whenever a public statement is contemplated would mean that no party could seek confidential legal advice before making public statements.

USCIS properly invokes the attorney-client privilege for confidential communications with counsel for the purpose of obtaining legal advice, regardless of the topic on which the legal advice was sought.

## C.   USCIS's Claimed Exemptions under FOIA Exemption 6

Exemption 6 permits withholding information when two requirements have been met: (1) the requested documents are "personnel and medical files and similar files;" and (2) the

disclosure of the documents would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see U.S. Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 596 n.1, 598 (1982).

USCIS invokes Exemption 6 as a basis to withhold, from items 3, 6, 23, and 24, personal identifying information that would disclose the names, email addresses, and telephone numbers of various USCIS employees who worked on the Draft Regulation, as well as one third-party individual.[6] USCIS has failed, however, to adequately support its invocation of Exemption 6.

1.   Personnel and Medical Files and Similar Files

The first requirement under Exemption 6 is that the requested documents fall into the category of "personnel and medical files and similar files." *See* 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted the formulation of "similar files" to include any "detailed [g]overnment records on an individual which can be identified as applying to that individual." *Wash. Post Co.*, 456 U.S. at 602 (quoting H.R. Rep. No. 89-1497, at 11 (1966)). Under this broad formulation, courts have held that Exemption 6 can extend to "bits of personal information, such as names and addresses" regardless of where they are filed or how the containing documents are labeled.[7] *White Coat Waste Project* v. *U.S. Dep't of Veterans Affs.*,

---

[6] This single non-government employee's identifying information was redacted from page 1 of USCIS's first production, as stated in USCIS's Supplemental *Vaughn* Index. *See* App. A, item 23; Suppl. *Vaughn* Index 1, ECF No. 28-2.

[7] The Supreme Court has acknowledged the breadth of this construction of "similar files," but has explained that the scope of Exemption 6 is limited by the exemption's second step, not by whether the files fall within the broad category of the exemption's first step. The limiting principle is thus whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see Wash. Post Co.,* 456 U.S. at 599–602; *see also White Coat Waste Project*, 404 F. Supp. 3d at 99–100.

404 F. Supp. 3d 87, 99 (D.D.C. 2019) (quoting *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006)).

Here, USCIS seeks to withhold the names, e-mail addresses, and phone numbers of individuals employed by DHS, as well as the personal identifying information of one individual associated with Fidelis, a private sector government relations firm. These "bits of personal information" fit within the broad definition of "similar files" under Exemption 6, so the Court must proceed to step two of the analysis.

      2.      <u>Clearly Unwarranted Invasion of Privacy</u>

The second step of the Exemption 6 analysis requires a court to "weigh the privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of privacy." *Id.* (quoting *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999)). The validity of USCIS's invocation of Exemption 6 turns on whether the names, email addresses, and phone numbers of government employees who worked on the "public charge" rules are "of such a nature that [their] disclosure would constitute a clearly unwarranted invasion of personal privacy." *Wash. Post Co.*, 456 U.S. at 589. Exemption 6 requires courts to balance "the individual's right of privacy" against FOIA's purpose of "open[ing] agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976).

In weighing individual employees' privacy interests, a court must determine whether disclosures "would compromise a substantial, as opposed to *de minimis*, privacy interest, because if no significant privacy interest is implicated[, then] FOIA demands disclosure." *White Coat Waste Project*, 404 F. Supp. 3d at 102 (quoting *Multi Ag Media LLC* v. *Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008)). In the context of a list of names, whether the disclosure is a

"significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 n.12 (quoting *Nat'l Assn. of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 877 (D.C. Cir. 1989)) (protecting list of Haitian nationals under Exemption 6 where they were at risk of retaliatory action by Haitian government).

USCIS recites potentially significant privacy interests, namely, the potential harms associated with harassment and invasion of privacy for government employees who work on controversial policy issues. In the current information age, such risks are by no means trivial. But they are also ubiquitous. The FOIA presumption in favor of disclosure would disappear if the mere possibility of harassment barred disclosure of government employees' names.

USCIS asserts in an affidavit that "DHS employees who work on sensitive agency issues, particularly the ones surrounding the public charge, have been subjected to individual harassment." Decl. of Terri White ¶ 26, ECF No. 20-1. But there is little flesh on these bones. USCIS's submission is couched in conclusory terms and does not meaningfully develop the connection between particular kinds of assignments and the prospect of harassment. *Cf. White Coat Waste Project*, 404 F. Supp. 3d at 104–05 (denying summary judgment as to an Exemption 6 claim in part because the VA failed to provide details about possible harassment beyond speculation); *Rose*, 425 U.S. at 3801 n.19 ("Exemption 6 [is] directed at threats to privacy interests more palpable than mere possibilities.").

On the other side of the balancing test, the Court must consider the public interest in the right of citizens to be informed about "what their government is up to." *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989); *see Maynard v. CIA*, 986 F.2d 547, 566 (1st Cir. 1993) (characterizing the citizens' right to know "what their government is up

to" as "the only cognizable 'public interest' for purposes of FOIA" (quoting *Reps. Comm. for Freedom of Press*, 489 U.S. at 773)).

The core policy underlying FOIA is that the public has a right to know what the government is doing and to know *who* within the government is doing it, unless there is good reason to believe that disclosure of individual identifiers will subject individual employees to unwarranted personal risk. Indeed, "under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in [FOIA]." *Wash. Post Co. v. U.S. Dep't of Health & Hum. Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982). USCIS fails to offer specific and articulable facts to overcome this presumption.

Absent a persuasive showing that there is an ongoing risk, a generalized intention to shield government employees from unwanted attention is insufficient to support an exemption from the FOIA's disclosure requirements.

In a slightly different vein, I note that item 23 concerns the personal identifying information of a third party and therefore stands on a different footing from the other materials for which USCIS invokes Exemption 6. USCIS describes item 23 as a communication involving "a representative" of Fidelis, "a private sector government relations firm," but tells nothing of who the "representative" is or what their role is in relation to the agency. Courts considering Exemption 6 have generally declined to find that disclosing the identity of a citizen who petitions the government to take some action raises privacy concerns. *People for the Am. Way Found.* v. *Nat'l Park Serv.*, 503 F. Supp. 2d 284, 305–06 (D.D.C. 2007). As a rule, the public has a right to know the identity of those who seek to influence the work of an agency.

I recommend that the Court enter summary judgment for LCR with respect to USCIS withholding of personnel names, work addresses, and the like, based on items that USCIS proposes to withhold under Exemption 6.

## V.     Request for *In Camera* Review

LCR asks the Court to conduct an *in camera* review of the materials that are shown—based on the Supplemental *Vaughn* Index—to be exempt from disclosure. In the circumstances of this case, such additional scrutiny is unnecessary. I have recommended permitting USCIS to claim exemptions only where USCIS's submissions make clear that its invocation of particular exemptions is proper.

LCR's request is essentially a "backstop" position. LCR does not point to particular circumstances that warrant individualized review of the documents in question. A generalized desire to double-check the government's work is insufficient to warrant page-by-page *in camera* inspection:

> Plainly, in some situations, *in camera* inspection will be necessary and appropriate. But it need not be automatic. An agency should be given the opportunity, by means of detailed affidavits or oral testimony, to establish to the satisfaction of the District Court that the documents sought fall clearly beyond the range of material that would be available to a private party in litigation with the agency.

*Env't Prot. Agency* v. *Mink*, 410 U.S. 73, 93 (1973). Under Exemption 5, the privileges at issue are the same that would apply in civil litigation with private parties, and there is scant reason to believe that *in camera* review should be any more prevalent in FOIA litigation than in other civil cases. In either context, it would be impracticable to conduct *in camera* review whenever a party seeks extra assurances about assertions of privilege.

## VI.    CONCLUSION

I recommend **GRANTING** in part and **DENYING** in part each party's motions, as follows:[8]

(1)    Defendant USCIS properly invokes Exemption 5, deliberative process privilege, and is entitled to summary judgment with respect to items 1, 2, 3, 4, 5, 6, 7, 16, 17, and 22. [Items 3, 6, 16, and 17 are also protected by the attorney-client privilege.]

(2)    Plaintiff LCR is entitled to summary judgment with respect to USCIS's claim of deliberative process privilege for items 8, 9, 10, 11, 12, 13, 14, 15, 18, 19, 20, and 21. [Items 8, 13, and 14, are nevertheless protected under the attorney-client privilege.]

(3)    Defendant USCIS properly invokes Exemption 5, attorney-client privilege, and is entitled to summary judgment with respect to items 3, 6, 8, 13, 14, 16, and 17.

(4)    Plaintiff LCR is entitled to summary judgment with respect to USCIS's invocation of Exemption 6 for items 3, 6, 23, and 24. [Items 3 and 6 are nevertheless subject to Exemption 5.]

 /s/ Paul G. Levenson
United States Magistrate Judge

August 14, 2023

---

[8] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Sec'y of Health & Hum. Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**APPENDIX A**

| Item Number | Production Number and Page Number(s) | Description | Claimed Exemption(s) |
|---|---|---|---|
| 1 | First Production Pages 10–525 (10–279; 280–525) | Two redlined versions of proposed revisions to the draft regulation pertaining to Inadmissibility on Public Charge Grounds | Exemption 5 – Deliberative Process |
| 2 | Second Production Pages 1–270; 271–516; 518–669 | Three redlined versions of proposed revisions to the draft regulation pertaining to Inadmissibility on Public Charge Grounds | Exemption 5 – Deliberative Process |
| 3 | Second Production Page 517 | Email from the DHS OGC staff level regulatory affairs team to USCIS Office of Policy and Strategy sharing proposed changes and edits to a redlined version of the draft Inadmissibility on Public Charge. | Exemption 5 – Deliberative Process

Attorney-Client Privilege

Exemption 6 |
| 4 | Third Production Pages 1–118 | Remaining pages from the draft redlined regulations produced in Production 2. | Exemption 5 – Deliberative Process |
| 5 | Third Production Pages 119–364 | A separate redlined version of proposed revisions to draft regulations pertaining to Inadmissibility on Public Charge Grounds | Exemption 5 – Deliberative Process |
| 6 | Third Production Page 365 | Email from the USCIS Special Counsel to the DHS OGC staff level regulatory team sharing proposed edits and a redlined version of the draft Inadmissibility on Public Charge Grounds Regulation as discussed between the DHS General Counsel and USCIS | Exemption 5 – Deliberative Process

Attorney-Client Privilege

Exemption 6 |
| 7 | Third Production Pages 366–500 | A redlined version of proposed revisions to the draft regulation pertaining to Inadmissibility on Public Charge Grounds | Exemption 5 – Deliberative Process |
| 8 | Fourth Production Pages 4–6 | Internal email discussion between employees of the USCIS Office of Public Affairs and the USCIS Chief Counsel regarding how or whether to respond to a news article about public charge. | Exemption 5 – Deliberative Process

Attorney-Client Privilege |

| 9 | Fourth Production Page 16 | Internal email discussion between USCIS staff level employees and the former Director of USCIS about an upcoming news article and how or whether the agency should respond. | Exemption 5 – Deliberative Process |
|---|---|---|---|
| 10 | Fourth Production Page 22 | Internal email discussion between the former Director of USCIS and USCIS staff level employees of the Office of Policy and Strategy discussing the accuracy of a news article about the number of immigrants who became lawful permanent residents in fiscal year 2016 -2018. | Exemption 5 – Deliberative Process |
| 11 | Fourth Production Page 26 | Internal email discussion between staff level employees of the Office of Policy and Strategy about how or whether to respond to a news article about public charge. | Exemption 5 – Deliberative Process |
| 12 | Fourth Production Page 27 | Internal email discussion between staff level employees of the USCIS Office of Policy and Strategy, Office of External Affairs, and the USCIS General Counsel about how or whether to respond to a news article about public charge and provide clarification to the facts reported. | Exemption 5 – Deliberative Process |
| 13 | Fourth Production Page 31 | Internal email exchange between the former Director of USCIS, the USCIS General Counsel, the USCIS Office of External Affairs, and the USCIS Office of Policy and Strategy about how and whether to respond to a news article. | Exemption 5 – Deliberative Process  Attorney Client Privilege |
| 14 | Fourth Production Pages 36–38 | Internal email exchange between the former USCIS Chief Counsel and the Office of Policy and Strategy and External Affairs about a proposed response to a reporter's questions about immigration issues; draft proposed response. | Exemption 5 – Deliberative Process  Attorney Client Privilege |
| 15 | Fourth Production Pages 40, 57 | Internal email exchange between the USCIS Office of Policy and Strategy and the Office of Public Affairs about how and whether to respond to a Houston Chronicle article. | Exemption 5 – Deliberative Process |

| 16 | Fourth Production Pages 45–46; 48–49; 51–52; 54–55; 61–62; 64–65 | Internal email exchange between the former USCIS Chief Counsel and the Office of Policy and Strategy and External Affairs about a proposed response to a reporter's questions about immigration issues; draft proposed response and draft version of the proposed public charge rule. | Exemption 5 – Deliberative Process<br><br>Attorney Client Privilege |
| 17 | Fourth Production Page 90 | Internal email exchange between the former USCIS Chief Counsel and the Office of Policy and Strategy and External Affairs about the proposed draft rulemaking on Public Charge. | Exemption 5 – Deliberative Process<br><br>Attorney Client Privilege |
| 18 | Fourth Production Page 109 | Internal email exchange between the USCIS Office of Policy and Strategy and the Office of Public Affairs about how and whether to respond to Twitter posts about the proposed public charge rule | Exemption 5 – Deliberative Process |
| 19 | Fourth Production Pages 114–122 | Internal emails between the former USCIS Chief Counsel and the Office of Policy and Strategy and External Affairs about Washington Post Stories to include a discussion about the content of the article and a USCIS response | Exemption 5 – Deliberative Process |
| 20 | Fourth Production Page 134 | Internal emails between the former USCIS Chief Counsel and the Office of Policy and Strategy and External Affairs about whether any messaging should go out in response to an upcoming news article about the proposed public charge rule. | Exemption 5 – Deliberative Process |
| 21 | Fourth Production Page 137 | Internal email between the former Director of USCIS, the USCIS General Counsel, the USCIS Office of External Affairs, and the USCIS Office of Policy and Strategy about whether to compose talking points in preparation for upcoming media about public charge generally | Exemption 5 – Deliberative Process |
| 22 | Fourth Production Pages 140–141 | Internal email between the USCIS Office of Policy and Strategy, the USCIS Office of Public Affairs, the DHS OGC staff level regulatory team | Exemption 5 – Deliberative Process |

| | | discussing the definition of who can use benefits under public charge | |
|---|---|---|---|
| 23 | First Production Page 1 | Email from the USCIS Chief of Staff to USCIS staff level employees forwarding for comment a copy of two redlined versions of sections of the "Draft Public Charge" Regulations received from a meeting with a representative of Fidelis, a private sector government relations firm, hoping to work with USCIS on the language ultimately used in the final version of the regulation | Exemption 6 |
| 24 | Fourth Production All pages | Names, email addresses, and phone numbers of government employees | Exemption 6 |